IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

BRIAN ADAMS

              Plaintiff,

     v.

CITY OF CAMDEN, <u>et</u> <u>al.</u>,

             Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 05-779 (JBS)

**OPINION**

---

APPEARANCES:

Jeffrey M. Thiel, Esq.
Steven M. Petrillo, Esq.
PETRILLO & GOLDBERG, P.C.
The Cooper River Law Building
6951 North Park Drive
Pennsauken, New Jersey 08109
    Attorneys for Plaintiff

Felix P. Gonzalez, Esq.
Mark V. Maguire, Esq.
OFFICE OF THE CAMDEN CITY ATTORNEY
City Hall - 4th Floor - Suite 419
520 Market Street
P.O. Box 95120
Camden, New Jersey 08101-5120
    Attorneys for Defendants City of Camden and City of Camden
    Police Department

Ralph Raymond Kramer, Esq.
605 White Horse Pike
Haddon Heights, New Jersey 08035
    Attorney for Defendant Luis Acetti

**SIMANDLE**, District Judge:

    This matter comes before the Court on the motion of two

defendants, the City of Camden and the Camden Police Department,

for summary judgment pursuant to Fed. R. Civ. P. 56 [Docket Item

14].  For the reasons explained below, the Court will grant the

motion in part and deny the motion in part.

**I.   BACKGROUND**

The facts as set forth here are those viewed in the light most favorable to the non-moving party, Plaintiff Brian Adams. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Plaintiff is a forty-nine year-old man who lives in the City of Camden and has epilepsy -- which causes him to suffer seizures, memory loss and periods of confusion -- and ataxia[1] -- which causes him to walk with an unsteady gait and to fall often and for which he compensates by walking with a cane. (Pl.'s Medical Records in Pl.'s Exs. D, E, F, G and H); (Adams Dep. Tr. at 59, 72-73, 77 in Pl.'s Ex. I).  On January 29, 2003, Camden City police officers, including Defendant Luis Acetti, tackled, beat and arrested Plaintiff for creating a public disturbance when Plaintiff was having an epileptic seizure.  Plaintiff was not a physical threat to passersby and he had complied with Officer Acetti's requests to stop waving his cane in the air and cursing.  (Acetti Dep. Tr. at 23 in Pl.'s Ex. C.)

On the date of his arrest, Plaintiff was walking from his mother's house to his own house, both in Camden, to take his scheduled dosage of epilepsy medication.  (Adams Dep. Tr. at 39.)

---

[1]  "An inability to coordinate muscle activity during voluntary movement; most often due to disorders of the cerebellum or the posterior columns of the spinal cord; may involve the limbs, head, or trunk."  Stedman's Medical Dictionary (27th ed. 2002)(available on Westlaw).

Plaintiff was talking with an acquaintance he met on the way and was leaning on a car for support when two plainclothes officers approached him and began questioning him about a shooting in the area, about which he had no knowledge.  (Id. at 39, 53-54, 59-61, 63.)  He explained this to the officers and that he wanted to go home to get his medicine, but they blocked his egress and continued asking questions.  (Id. at 39, 60.)  Plaintiff informed them repeatedly that he had to go home to take medication, but they wouldn't let him pass.  (Id. at 39, 53-54.)
At some point Plaintiff began having a seizure.  (Id. at 65.)

     Plaintiff does not recall much of what happened next, although he testified at his deposition that he remembers the plainclothes officers calling over approximately five uniformed Camden police officers to arrest him.  (Id. at 64, 66; Acetti Dep. Tr. at 28-29.)  By that point, Plaintiff was having a seizure and the uniformed officers were aggressively wrestling him to the ground and handcuffing him.  (Adams Dep. Tr. at 65.)  One officer kneed him in the back, (id. at 67), another sprayed mace in his face, (id. at 68), and a few officers beat him with their clubs, (id. at 80).  Then the officers put him in a police car to drive him to jail; however, when he became aware of his surroundings he was in Cooper Hospital.  (Id. at 70-72).

     After the incident, Plaintiff's hands swelled because the handcuffs were so tight; his neck, back and shoulder were sore;

and his shins were bruised from the officers beating him with
clubs.  (Id. at 79-81).  Officer Acetti was the principal officer
who arrested Plaintiff, put him in a police car intending to take
him to the police station, and then drove him to the hospital.
(Acetti Dep. Tr. at 27, 30-31).  Prior to the arrest, Officer
Acetti had asked Plaintiff, who was behaving bizarrely, to stop
his behavior or else he would get a summons for disorderly
conduct.  (Id. at 23.)  According to Mr. Acetti, Plaintiff
complied with this request and began walking away when the
officers attacked him.  (Id.)

## II.  MOTION FOR SUMMARY JUDGMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate when the materials of record
"show that there is no genuine issue as to any material fact and
that the moving party is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(c).  In deciding whether there is a
disputed issue of material fact, the court must view the evidence
in favor of the non-moving party by extending any reasonable
favorable inference to that party; in other words, "the nonmoving
party's evidence 'is to be believed, and all justifiable
inferences are to be drawn in [that party's] favor.'"  Hunt v.
Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L. Ed. 2d 731
(1999) (quoting Liberty Lobby, 477 U.S. at 255).  The threshold
inquiry is whether there are "any genuine factual issues that

4

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Liberty Lobby</u>, 477 U.S. at 250; <u>Brewer v. Quaker State Oil Refining Corp.</u>, 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

However, summary judgment may be appropriate when the non-moving party merely rests on its pleadings.

> Although entitled to the benefit of all justifiable inferences from the evidence, the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth "specific facts showing that there is a genuine issue for trial," else summary judgment, "if appropriate," will be entered.

<u>United States v. Premises Known as 717 S. Woodward St., Allentown, Pa.</u>, 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).

**B.   Claims Against the Police Department**

As an initial matter, the Court will grant the motion for summary judgment as to the Camden Police Department, which aspect of the motion Plaintiff does not oppose.  In New Jersey a municipal police department is not an entity separate from the municipality, N.J. Stat. Ann. § 40A:14-118 (municipal police department is "an executive and enforcement function of municipal government"); therefore, the Camden Police Department is not a proper defendant in this action, <u>see</u> <u>McGovern v. Jersey City</u>, No. 98-CV-5186, 2006 WL 42236 at *7 n.4 (D.N.J. Jan. 6, 2006) (police

departments cannot be sued in conjunction with municipalities because police departments are administrative arms of local municipalities, not separate entities), <u>Padilla v. Twp. of Cherry Hill</u>, 110 Fed. Appx. 272, 278 (3d Cir. 2004) (same), <u>DeBellis v. Kulp</u>, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001) (same).  The Camden Police Department is entitled to judgment as a matter of law and all claims against it are hereby dismissed.

**C.   Claims Against the City under 42 U.S.C. § 1983**

In Count Three of his Complaint, Plaintiff alleges, among other things, that the City of Camden ("the City" or "Defendant") is liable under 42 U.S.C. § 1983 for willfully and with deliberate indifference violating his rights under the Fourth and Fourteenth Amendments because the police unlawfully detained him, unreasonably seized him, assaulted him, and deprived him of his liberty.  (Compl. ¶ 17.)  The City argues that these claims must be dismissed for lack of evidence.  (Def.'s Br. at 9-10.) Specifically, the City claims that Plaintiff did not conduct any discovery on these issues and will be unable to prove the City's liability for any officer's actions under the requirements set forth in <u>Monell v. Dep't of Soc. Svcs.</u>, 436 U.S. 658 (1978). Plaintiff opposes and claims – citing no authority – that the conduct of Officer Acetti "is prima facie evidence of the City's deliberate indifference for the training and supervision of its officers."  (Pl.'s Br. at 9).

6

42 U.S.C. § 1983 provides a vehicle for private parties to enforce their Constitutional or other federally-protected rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

In Monell the U.S. Supreme Court held that municipalities are "among those persons to whom § 1983 applies."  436 U.S. at 690. However,

> [t]here is no *respondeat superior* theory of municipal liability, so a city may not be held vicariously liable under § 1983 for the actions of its agents.  Rather, a municipality may be held liable only if its policy or custom is the "moving force" behind a constitutional violation.

Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) (citing Monell, 436 U.S. at 691 and Bd. of County Comm'rs. v. Brown, 520 U.S. 397, 400 (1997)).  Thus,

> a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal "policy" or "custom" that caused the plaintiff's injury. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed

> pursuant to a "custom" that has not been
> formally approved by an appropriate
> decisionmaker may fairly subject a
> municipality to liability on the theory that
> the relevant practice is so widespread as to
> have the force of law.

Brown, 520 U.S. at 403-04 (citations omitted).  In other words,

"[a] plaintiff must identify the challenged policy, attribute it

to the city itself, and show a causal link between execution of

the policy and the injury suffered."  Losch v. Parkesburg, 736

F.2d 903, 910 (3d Cir. 1984).

Further, in order to succeed on claims related to the City's

supervision, training or hiring of Officer Acetti, Plaintiff

would have to prove that the City acted with deliberate

indifference to the known or obvious consequences of its acts or

its failure to act.  Canton v. Harris, 489 U.S. 378, 388 (1989).

"A showing of simple or even heightened negligence will not

suffice."  Brown, 520 U.S. at 407.

The Court will grant the summary judgment motion as to

Plaintiff's § 1983 claims against the City for inadequate

training or supervision of Officer Acetti and other police

officers because Plaintiff has not identified any policy or

custom that would establish the City's conscious disregard for

constitutional rights.  Because § 1983 does not impose *respondeat*

*superior* liability on municipalities, the Supreme Court has

explained that when a plaintiff accuses a municipality of

8

inadequately training its officers, the plaintiff must show the
municipality's deliberate indifference by (1) identifying the
deficient municipal training program or policy, or (2) showing a
pattern of constitutional violations as to which the municipality
has disregarded its obligations to remedy such misconduct:

> [The Supreme Court] concluded in <u>Canton</u> that
> an "inadequate training" claim could be the
> basis for § 1983 liability in "limited
> circumstances." [489 U.S.] at 387. [The
> Court] spoke, however, of a deficient
> training "program," necessarily intended to
> apply over time to multiple employees. <u>Id.</u>,
> at 390. Existence of a "program" makes proof
> of fault and causation at least possible in
> an inadequate training case. If a program
> does not prevent constitutional violations,
> municipal decisionmakers may eventually be
> put on notice that a new program is called
> for. Their continued adherence to an approach
> that they know or should know has failed to
> prevent tortious conduct by employees may
> establish the conscious disregard for the
> consequences of their action--the "deliberate
> indifference"--necessary to trigger municipal
> liability. <u>Id.</u>, at 390, n. 10 ("It could . .
> . be that the police, in exercising their
> discretion, so often violate constitutional
> rights that the need for further training
> must have been plainly obvious to the city
> policymakers, who, nevertheless, are
> 'deliberately indifferent' to the need");
> <u>id.</u>, at 397 (O'CONNOR, J., concurring in part
> and dissenting in part) ("Municipal liability
> for failure to train may be proper where it
> can be shown that policymakers were aware of,
> and acquiesced in, a pattern of
> constitutional violations . . ."). In
> addition, the existence of a pattern of
> tortious conduct by inadequately trained
> employees may tend to show that the lack of
> proper training, rather than a one-time
> negligent administration of the program or

9

> factors peculiar to the officer involved in a
> particular incident, is the "moving force"
> behind the plaintiff's injury. See id., at
> 390-391.

Brown, 520 U.S. at 407-08.  Plaintiff has made no allegation and

presented no evidence of any municipal program or widespread

custom of police training or supervision.  Nor has Plaintiff

alleged or shown how any failure to train Camden police officers

resulted in any injury to him.  In this situation, a reasonable

jury could not infer that the City was deliberately indifferent

to Plaintiff's federally protected rights; the City is entitled

to judgment as a matter of law on Plaintiff's training and

supervision claims under § 1983.

The Court will also grant the City's motion as to

Plaintiff's claims under § 1983 for the hiring of Officer Acetti.

Plaintiff has not alleged any facts in Officer Acetti's

background that would permit a jury to find that the obvious

consequence of hiring him would be a violation of the specific

rights allegedly violated here.

> [Under § 1983, a] plaintiff must demonstrate
> that a municipal decision reflects deliberate
> indifference to the risk that a violation of
> a particular constitutional or statutory
> right will follow the decision. Only where
> adequate scrutiny of an applicant's
> background would lead a reasonable
> policymaker to conclude that the plainly
> obvious consequence of the decision to hire
> the applicant would be the deprivation of a
> third party's federally protected right can
> the official's failure to adequately

10

> scrutinize the applicant's background
> constitute "deliberate indifference."
>
> [A] finding of culpability simply cannot
> depend on the mere probability that any
> officer inadequately screened will inflict
> any constitutional injury. Rather, it must
> depend on a finding that this officer was
> highly likely to inflict the particular
> injury suffered by the plaintiff. The
> connection between the background of the
> particular applicant and the specific
> constitutional violation alleged must be
> strong.

Brown, 520 U.S. at 411-12.

The Court may not permit these § 1983 claims to go forward
against the City on Plaintiff's argument that "this incident
would not have occurred were it not for the negligent training
[and hiring] of Officer Acetti and the City's obvious failure to
supervise him . . . ." (Pl's Br. at 10.)  This theory of
causation is not sufficient to support municipal liability under
42 U.S.C. § 1983.  As the Supreme Court has said,

> [e]very injury suffered at the hands of a
> municipal employee can be traced to a hiring
> decision in [this] "but-for" sense: But for
> the municipality's decision to hire the
> employee, the plaintiff would not have
> suffered the injury. To prevent municipal
> liability for a hiring decision from
> collapsing into respondeat superior
> liability, a court must carefully test the
> link between the policymaker's inadequate
> decision and the particular injury alleged.

Brown, 520 U.S. at 410.  Plaintiff failed to provide any basis
for a jury to find such a link.  Therefore, the § 1983 claim
against the City for negligent hiring also fails as a matter of

11

law.[2]

**D.    State Law Claims Against the City**

1.    <u>Negligent Hiring</u>

In Count Four of the Complaint, Plaintiff claims that the
City is liable in tort under New Jersey law for negligently
hiring, training and supervising Officer Acetti.  (Compl. ¶ 22.)
The City claims that the claim for negligent hiring must be
dismissed because Plaintiff has no evidence indicating that
Officer Acetti displayed any incompetence or dangerous attributes
that would make it inappropriate for the City to hire him, nor
has Plaintiff acquired any evidence regarding the City's hiring
practices.  (Def.'s Br. at 11-12.)  Plaintiff's brief opposing
the motion to dismiss does not appear to address this issue.

In New Jersey,

> the tort of negligent hiring has as its
> constituent elements two fundamental
> requirements. The first involves the
> knowledge of the employer and foreseeability
> of harm to third persons. An employer will
> only be held responsible for the torts of its
> employees beyond the scope of the employment
> where it knew or had reason to know of the
> particular unfitness, incompetence or
> dangerous attributes of the employee and
> could reasonably have foreseen that such
> qualities created a risk of harm to other
> persons. The second required showing is that,

---

[2]   Similarly, Plaintiff's failure to bring forward any
evidence of the City's negligent training or supervision of its
officers entitles the City to summary judgment on the Plaintiff's
state law claims for negligent training and supervision.

12

through the negligence of the employer in
hiring the employee, the latter's
incompetence, unfitness or dangerous
characteristics proximately caused the
injury.

Di Cosala v. Kay, 91 N.J. 159, 173-74 (1982) (citations omitted).

Plaintiff has not come forward with any information
regarding these fundamental requirements.  Nothing in the record
before the Court indicates any unfitness of Officer Acetti or any
other John Doe officer involved in this incident; nor has
Plaintiff informed the Court of the City's screening practices.
Therefore, the Court will grant the motion for summary judgment
as to Plaintiff's claim against the City for negligent hiring.

2.   False Arrest & Imprisonment

In Count One of the Complaint, Plaintiff claims that the
City, Officer Acetti and other Camden police officers violated
the U.S. and New Jersey Constitutions and other New Jersey laws
by falsely arresting and imprisoning him without probable cause.
(Compl. ¶¶ 7-9.)  Defendant claims that Plaintiff's claim for
false arrest and imprisonment against the City arising under New
Jersey law should be dismissed because Plaintiff alleges Officer
Acetti's misconduct was willful or wanton and the New Jersey Tort
Claims Act, N.J. Stat. Ann. § 59:2-10, provides municipalities
with immunity for the willful misconduct of its employees.
(Def.'s Br. at 10-11.)  Plaintiff opposes and notes that, in
general, the City is responsible for the injuries caused by its

13

employees when those employees act within the scope of their employment. (Pl.'s Br. at 10-11) (quoting N.J. Stat. Ann. § 59:2-2).

Both parties' arguments miss the mark.  The New Jersey Tort Claims Act permits false arrest and imprisonment actions against municipalities under the *respondeat superior* theory so long as the municipal employee was acting in the scope of employment and without "willful misconduct."  See N.J. Stat. Ann. §§ 59:2-2a, -10.  Under N.J. Stat. Ann. § 59:2-2a:

> A public entity is liable for injury
> proximately caused by an act or omission of a
> public employee within the scope of his
> employment in the same manner and to the same
> extent as a private individual under like
> circumstances.

However, under N.J. § Stat. Ann. 59:2-10:

> A public entity is not liable for the acts or
> omissions of a public employee constituting a
> crime, actual fraud, actual malice, or
> willful misconduct.[3]

---

[3]  Although the Act further provides that the "public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable,"  N.J. Stat. Ann. § 59:2-2b, and in general the employee is not liable when acting in good faith, N.J. Stat. Ann. § 59:3-3, this good faith immunity does not apply to claims for false arrest or imprisonment:

> A public employee is not liable if he acts in
> good faith in the execution or enforcement of
> any law. Nothing in this section exonerates a
> public employee from liability for false
> arrest or false imprisonment.

14

Thus, the Tort Claims Act prohibits an action against a municipality when its municipal police officer falsely arrests or imprisons someone only if the officer was acting outside the scope of employment or acted with wilful misconduct.  Because these torts do not require that the officer had any particular state of mind, there is no <u>per</u> <u>se</u> ban on this action against the municipality.  For false arrest, "[t]he essential thing is the constraint of the person," <u>Earl v. Winne</u>, 14 N.J. 119, 127 (1953), while "[t]he gist of false imprisonment is merely unlawful detention without more," <u>id.</u> at 128.  It is possible for the City to be liable if Officer Acetti or the officers did not act with willful misconduct.

The City argues that Plaintiff alleges only that the officers acted with wilful misconduct.  The Court disagrees. Plaintiff alleges that the officers "at all times material hereto were acting within the scope of their employment," (Compl. ¶ 5), when they "unlawfully detain[ed] Brian Adams, in violation of . . . the Constitution or other laws of the State of New Jersey," (Compl. ¶ 7).  A liberal reading of the complaint requires this Court to find that the alleged "unlawful" actions of Officer Acetti could fall somewhere in the zone between good faith and wilful misconduct.  The fact that elsewhere in the Complaint

---

N.J. Stat. Ann. § 59:3-3.

Plaintiff has alleged Officer Acetti acted with wilful misconduct does not doom this claim; the Federal Rules of Civil Procedure permit a party to set forth multiple alternate claims.  Fed. R. Civ. P. 8(e)(2).

Thus, there is a genuine issue of fact as to Officer Acetti's state of mind when he detained and arrested Plaintiff. The issue of the City's liability for any false arrest or imprisonment under the New Jersey Tort Claims Act cannot be decided as a matter of law and the Court will not bar these claims.

**E.  John Doe Defendants**

Pursuant to Federal Rule of Civil Procedure 21, "parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just."  Fed. R. Civ. P. 21.  District Courts in the Third Circuit have used this Rule to exclude John Doe parties from an action when appropriate.  See, e.g., Hightower v. Roman, Inc., 190 F. Supp. 2d 740, 754 (D.N.J. 2002); Atlantic Used Auto Parts v. City of Philadelphia, 957 F. Supp. 622, 625 (E.D. Pa. 1997) ("fictitious party names may be used 'at least until reasonable discovery permits the actual defendants to assume their places . . ., however, . . . '[f]ictitious names must eventually be dismissed, if discovery yields no identities.'" (citations omitted)).  In this case, the Court will similarly use its

discretion under Rule 21 to dismiss all John Doe defendants from this action.  After a year of discovery and motion practice, Plaintiff has failed to identify these defendants or provide any evidence of their liability for the claims raised in the Complaint.  It is appropriate, before proceeding to trial, to eliminate these fictitious defendants from this action under Fed. R. Civ. P. 21.

**III. CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's summary judgment motion in part and deny it in part.  Consistent with this opinion, Plaintiff's Complaint alleges the following remaining claims: a claim under New Jersey law against the City and Officer Acetti for false arrest and false imprisonment; a claim under New Jersey law against Officer Acetti for assault; and a § 1983 claim against Officer Acetti as described in ¶¶ 17-19 of the Complaint, for unlawful arrest, unreasonable seizure, and violation of other of Plaintiff's federal Constitutional rights.

The accompanying Order will be entered.


**November 8, 2006**                    **s/ Jerome B. Simandle**
Date                                     Jerome B. Simandle
                                         United States District Judge


17